Terry LAY, Plaintiff/Appellant,

v.

ST. LOUIS HELICOPTER AIRWAYS, INC., Area Rescue Consortium of Hospitals, and Cyril C. Woodrome, Defendants/Respondents.

No. 63492.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 11, 1994.

Application to Transfer Denied
Feb. 22, 1994.

Douglas B. Salsbury, St. Louis, for plaintiff-appellant.

Herbert Hoffman, Clayton, Vance D. Miller, St. Louis, for defendants-respondents.

GRIMM, Presiding Judge.

Employee Terry W. Lay brought suit against his former employer, St. Louis Helicopter, alleging (1) wrongful discharge from employment, and (2) fraud. He also sued Area Rescue Consortium of Hospitals (ARCH) and its executive director, Cyril C. Woodrome, for tortious interference with a business expectancy.

The trial court sustained defendants' motions for summary judgment. Employee appeals, raising two points of error. Both allege summary judgment was improper because defendants failed to establish a "legal right to judgment." We disagree and affirm.

## I. Motions on Appeal

### A. Supplemental Record

Preliminarily, we consider pending motions and objections. First, we consider employee's Motion for Leave to File Supplement to Record on Appeal. ARCH and director object because the supplemental documents were not before the trial court.

Our examination of the record reveals that only portions of these documents were part of the record before the trial court. We cannot consider records that were not before the trial court. *See Miller v. River Hills Dev.*, 831 S.W.2d 756, 757–58 (Mo.App.E.D. 1992). Employee's motion is denied. We disregard reference to these documents in employee's brief to the extent they were not before the trial court.

### B. Affidavit

Second, we consider employee's motion to strike an affidavit of one of ARCH's and director's attorneys. The affidavit purports to compare the contents of the trial court's file with the material contained in the Supplement to Record on Appeal. Employee's motion is granted.

### C. Unsigned Deposition

Finally, we consider ARCH's and director's objection to employee's use of his own unsigned deposition in his Memoranda opposing Summary Judgment and in his

Brief on Appeal. At the conclusion of his deposition, employee's attorney said, "We will not waive signature." *See* Rule 57.03(f).

The court reporter's certificate reflects that she completed preparation of the deposition on May 20, 1992. She noted on the certificate that although she submitted the signature page on June 10, 1992, it had not been returned. Employee never signed the deposition.

 Although not signed, a deposition may be used "unless, on a motion to suppress, the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part." *Id.* Defendants did not file a motion to suppress, nor does the record reflect that they objected to the trial court's consideration of the deposition. Failure to object constitutes waiver of the objection. *Edson v. Fahy*, 330 S.W.2d 854, 858–59 (Mo.Div. 2 1960); *see also Mound Rose Cornice & Sheet Metal Works, Inc. v. H. Kalicak Constr. Co.*, 454 S.W.2d 603, 605 (Mo.App.E.D.1970). The objection is denied.

## II. Background

We review the record in the light most favorable to employee. Viewed in this light, the evidence discloses that employee, a licensed helicopter pilot, began employment as a full-time pilot for employer about January 1, 1988. He was hired to fly helicopter emergency service. He did not have a written contract of employment with employer; thus, he was an employee at will.

A contractual relationship existed between ARCH and employer by which employer provided helicopters, pilots, and maintenance to ARCH. The contract provided that the pilots and mechanics were employer's employees, not ARCH's employees.

On December 21, 1989, employee refused to take three flights. Employee refused to take the flights because of his "sincere belief that it was to (sic) dangerous under" the weather conditions. Employee further stated his belief that taking the flights would have violated employer's operation manual, the "Code of Ethics," and the FAA Regulations.

The next day, director advised employer's president that he did not want employee flying for ARCH anymore. Then, employee, director, employer's president, another pilot, and a flight nurse had a meeting. In the meeting, director recited several reasons why he did not want employee flying in the ARCH program. Employee quoted director as saying "that the bottom line was that [employee] lost them $6,000 in revenue." Director stated that if employee had not declined to take the flights, he would not have asked for employee to be removed from the ARCH program at that time.

On that same day, employer's president terminated employee. According to employer's president, director told him that he wanted employee out of ARCH's program for "a series of problems relating to attitude that [employee] had been exhibiting."

Also, employer's president formulated the opinion "that there was no reason that the flights that [employee] turned down should have been turned down." He stated that if director had not raised the issue of employee's failure to take the three flights, employee would not have been terminated.

Director was aware of the strength of his position in his dealings with employer. Also, director knew that employer's president was very responsive to his requests and demands.

Employer's president stated that because of the significance of the contract between ARCH and employer, he felt some pressure when director told him he wanted employee off the program. Employer's president could not recall whether he ever said anything to director to the effect that he did not want to terminate employee.

Once he had been asked to remove employee from the ARCH program, employer's president said that he did not even consider the "eventuality" of refusing the request. He believed director had the right to ask that a pilot be removed from their program. Therefore, there was never any question in employer's president's mind that when director made his request, he would comply.

Employer contends that employee was terminated because director no longer wanted

employee on the ARCH program. According to employer's president, once employee had been pulled off of the ARCH program, there was no choice but to terminate him. Although employer had a total of fourteen helicopters and one small single engine airplane within its fleet, there was no other pilot opening to offer employee. He explained that they do not have extra pilots on staff awaiting assignment; "we hire them as we need them."

Employee alleges he was terminated for making a pilot judgment call. He determined that the flights, which he was asked to take on December 21, were not safe. He based his decision upon (1) information from the weather briefer, (2) his experience on a December 16 flight in cold weather, (3) his experience from his flying career, and (4) the extreme cold weather on December 21, which, he believed, was causing the aircraft controls to act sluggish.

Our review is essentially de novo because the propriety of summary judgment is purely an issue of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993).

### III. Claims Against Employer

Employee asserted claims of fraud and wrongful discharge against employer. In his first point, employee argues that the trial court erred in sustaining employer's summary judgment motion because employer failed to establish a legal right to judgment on either claim.

### A. Wrongful Discharge

"Under Missouri's employment at will doctrine an employer can discharge—for cause or without cause—an at will employee who does not otherwise fall within the protective reach of a contrary statutory provision and still not be subject to liability for wrongful discharge." *Dake v. Tuell,* 687 S.W.2d 191, 193 (Mo.banc 1985).

■■■ Employee contends that he falls within the public policy exception to the employee at will doctrine. The public policy exception applies to employees who have the benefit of a constitutional provision, statute, or regulation based on a statute. *See Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo.banc 1988). These cases generally involve employees fired for (1) refusing to violate a statute, (2) reporting violations of the law by employers or fellow employees, or (3) asserting a legal right. *See Rothweil v. Wetterau, Inc.,* 820 S.W.2d 557, 559 (Mo.App. E.D.1991).

■■■ The public policy exception is narrow in scope. *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 871 (Mo.App.W.D.1985). The category we are considering, refusing to violate a statute, has two requirements. First, the employer required conduct of the employee that violated a statute, constitutional provision, or regulation adopted pursuant to statute. *Crockett v. Mid–America Health Serv.,* 780 S.W.2d 656, 658 (Mo.App.W.D. 1989). In other words, the employer directed the employee to commit a crime.* *Boyle,* 700 S.W.2d at 873. Second, the employee was discharged for his refusal to perform the unlawful act. *Crockett,* 780 S.W.2d at 658.

Employee asserts that he was discharged for failing to take three flights. In his affidavit in opposition to employer's summary judgment motion, employee said:

 * * * * * *

3. That I refused to take the three (3) helicopter flights, which I was asked to take on December 21, 1989, because of my sincere belief that it was to (sic) dangerous under the circumstances and conditions then existing, to take those flights.

4. That I believe that had I taken those flights against my better professional judgment, that I would have been violating the codes and regulations with which I had a professional and ethical responsibility to comply.

Employee argues that the codes and regulations are a clear mandate of public policy promoting aviation safety. However, em-

---

* We acknowledge that *Boyle* recognized two areas, i.e., "to commit a crime or to act contrary to public policy." *Boyle,* 700 S.W.2d at 873. However, all cases cited in support of this statement involved employee being discharged for refusal to commit crimes.

ployee did not furnish the trial court with a copy of any of these codes or regulations.

Although employee did not furnish the trial court with a copy of any code or regulation, several paragraphs in his petition refer to specific codes and regulations. However, defendants denied the allegations contained in those paragraphs; thus, it is questionable that they are before us. We briefly consider those references *ex gratia.*

One reference is to an FAA regulation concerning the responsibility and authority of the pilot in command. The specific language states that the "pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." Another reference is to the Code of Ethics of the Helicopter Association International which says, "a member's pilots will exercise their best judgment to insure a maximum safety factor at all times."

■ The FAA's regulation concerning a pilot's responsibility and the "Code of Ethics" requirement that a pilot use his best judgment are not clear mandates which allow employee to fall within the public policy exception. Neither imposes a duty on an employer to refrain from terminating a pilot whose judgment calls are contrary to the employer's judgment.

Moreover, employee was not directed to fly any of the three flights on December 21. He was asked to make the flights and he refused. However, even if we were to assume he was directed to make the flights, nothing indicates that he was directed to commit a crime. Thus, employee cannot say that he was terminated because he declined to obey directions to commit a crime. *Cf. Boyle,* 700 S.W.2d at 873. Therefore, he has not stated a claim for wrongful discharge.

### B. Fraud

In employee's first point, he further argues that employer "has adduced no evidence to negate the possibility that [he] can make a submissible case in fraud."

Employee's petition alleges that employer fraudulently represented to him that pilots were expected and required to comply with the Operations Manual, Code of Ethics, and FAA Regulations. Also, he alleged these representations were false when made and were made by employer with knowledge of their falsity.

Employee's fraud claim is based on his allegation that he was fired because he refused to take the flights. However, in support of its summary judgment motion, employer attached portions of employee's deposition. There, employee stated that the ground for his termination was that "he hadn't satisfied someone" at ARCH. Employee did not challenge this basis for his discharge in his affidavit in opposition. *See* Rule 74.04(e). Point denied.

### IV. Intentional Interference with Contract

Employee also asserted a claim for intentional interference with a business expectancy against ARCH and director. In his second point, he contends that the trial court erred in sustaining ARCH's and director's summary judgment motion because they failed to meet their burden of establishing a "legal right to judgment."

■ "A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 796 S.W.2d 369, 372 (Mo.banc 1990). Because "absence of justification" is dispositive, we address only that element.

### A. Employee's Claim Against ARCH

As to the element of justification, employee argues that defendants were motivated by an improper purpose. He contends that ARCH and director intended to foil his observance of *Federal Aviation Regulations,* the pilot's "Code of Conduct," and an operations manual. He argues that "to 'wield the club' of the sanction of firing in order to achieve this improper purpose, makes said act an act 'without justification.' "

Director and ARCH both admit that director requested employee be removed from ARCH's flying program. However, in director's affidavit, he stated that at "no time did I request that [employee] be fired from [employer]."

Further, director's affidavit states that he had the contractual right to request the removal of any pilot from ARCH's program if he determined it would be to ARCH's benefit. Employee did not dispute this right either before the trial court or here. Thus, he has not raised a factual issue regarding ARCH's right to ask for his removal. "No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Community Title*, 796 S.W.2d at 372.

Even though a defendant has a right to interfere, it may not employ improper means. *Id.* at 373. "Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference." *Id.* They include "misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.*

In opposition to director's affidavit that he did not seek to have employee fired, employee points only to a statement. The statement, contained in employee's deposition, is "[Employer's president] told me in a conversation later about my employment that [director] stated that, if [employer's president] tried to save my job, it would have serious consequences on the contract." He suggests an inference can be drawn that ARCH engaged in improper means.

However, this deposition testimony is insufficient to overcome the summary judgment motion. Employee's statement is not based on personal knowledge. Instead, it is hearsay. Hearsay statements that would be inadmissible at trial are not competent to support objections to a motion for summary judgment. *Capobianco v. Pulitzer*

*Publishing Co.*, 812 S.W.2d 852, 860 (Mo. App.E.D.1991). Rather, Rule 74.04(e) requires opposing affidavits to (1) contain admissible facts and (2) "show affirmatively that the affiant is competent to testify to the matter stated therein."

Further, when a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of his pleadings. Rule 74.04(e). Instead, the adverse party must respond by setting "forth specific facts showing there is a genuine issue for trial. If [the adverse party] does not so respond, summary judgment, if appropriate, shall be entered against [that party]." *Id.*

Here, employee failed to show that there is a genuine issue as to any material fact regarding the fourth element—absence of justification. There is no allegation or inference in the record supported by competent evidence showing that ARCH acted outside of its legal rights or employed improper means. Thus, ARCH is entitled to summary judgment.

## B. Employee's Claim Against Director

Employee also asserted a claim of intentional interference with a business expectancy against ARCH's director personally. There is an additional element when a corporate officer is the defendant. The absence of justification element requires "that the officer interfere with the contract for personal, as opposed to corporate, interest *plus* that the officer employed improper means. Both, not one or the other, are required." *Eggleston v. Phillips*, 838 S.W.2d 80, 83 (Mo.App.E.D.1992).

Neither requirement is present in this case. We cannot find any allegation, inference, or other evidence that director acted for personal rather than corporate reasons. Moreover, only a bare allegation, unsupported by competent evidence, charges director with employing improper means.

Employee submits that director "exhibited a callousness about the impact of his interference on significant safety considerations...." He also alleges that director

took it upon himself to severely sanction employee for placing safety first.

Neither of these contentions refute director's claim to judgment as a matter of law on the element of absence of justification. The trial court properly entered summary judgment in favor of director. Point denied.

The trial court's judgment is affirmed.

CARL R. GAERTNER and AHRENS, JJ., concur.