**Wayne E. ADOLPHSEN, Appellant,**

v.

**HALLMARK CARDS, INC., Respondent.**

No. WD 50434.

Missouri Court of Appeals,
Western District.

Oct. 10, 1995.

Rik N. Siro, Kansas City, for appellant.

Robert L. Driscoll, Kansas City, for respondent.

Before FENNER, C.J., P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

Wayne E. Adolphsen appeals from the dismissal of his petition alleging wrongful termination by Hallmark Cards, Inc. ("Hallmark").

Adolphsen alleges that (1) the trial court erred in dismissing his claim for wrongful discharge because his petition properly stated a claim under the public policy exception to the at-will employment doctrine; and (2) the trial court erred in dismissing his claim for punitive damages because the petition stated a claim under the public policy exception to the at-will doctrine and has further alleged the requisite willful and wanton misconduct on the part of defendant. The trial court's order granting the dismissal is vacated, and the cause is remanded for further proceedings.

■ On August 1, 1994, Adolphsen filed a petition against Hallmark for wrongful discharge. Because the issue before us is the propriety of the dismissal for failure to state a cause of action, we carefully examine the allegations of the petition, accepting the allegations as true, and we construe them liberally, granting Adolphsen the benefit of all reasonable inferences. *Murphy v. A.A. Matthews*, 841 S.W.2d 671, 672 (Mo. banc 1992). In his petition, Adolphsen alleged that in January, 1993, he was employed by Hallmark in the flight department as a co-pilot/mechanic and was a reliable, loyal employee. Prior to January, 1993, Adolphsen and others in the department told their supervisor that the department was violating Federal Aviation Administration ("FAA") safety regulations, set forth in 14 C.F.R. § 91.1 as well as regulations published by the airplane manufacturers. Management allegedly responded to the employees' concerns by telling Adolphsen that "Hallmark could not afford to be legal."

Adolphsen alleges that, being unsatisfied with this answer, Adolphsen and the others prepared a summary of their safety concerns, entitled "Executive Summary" and presented it to Hallmark's Chief Executive Officer, Mr. Irvine Hockaday. Mr. Hockaday, according to the petition, assured the employees that they had done the right thing. He told them that he would keep their names confidential and that their jobs were not in jeopardy.

Adolphsen alleges that some time later, his supervisors became aware that the "Executive Summary" had been presented to Hockaday by someone. Outside consultants were hired by upper management to conduct a maintenance and safety compliance performance audit of the flight department. Thereafter, the flight department supervisors rigorously interrogated the employees in an attempt to ascertain who had reported the concerns to Mr. Hockaday. Adolphsen alleges that he was harassed by his superiors and "treated like a dog" until he was fired in September, 1994. He alleges that the harassment and uncivil treatment were in retaliation for his reporting the violations. He alleges his supervisors were guilty of a calculated effort to get him to quit his job. Adolphsen alleges he eventually was terminated on September 20, 1993, without any prior warning, as an act of retaliation. He sought damages for wrongful discharge.

After the petition was filed, Hallmark filed a motion to dismiss Adolphsen's petition, claiming that Adolphsen had not stated a cause of action because Missouri law allows employers to discharge employees for any reason, provided there is no contrary statutory provision. Adolphsen contended in response that he was entitled to the benefit of a "public policy exception" to the general rule. The trial court disagreed with Adolphsen, finding that Adolphsen's petition, "does not establish or allege facts to support a claim that the alleged FAA violations are against a clear public policy mandate that was established to protect the citizens of this nation."

■ "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). For Adolphsen to make a submissible case he must plead and establish the elements of a cause of action under an exception to the employment-at-will doctrine. Missouri's employment-at-will doctrine historically [1] has permitted an employer to discharge an at-will employee, for cause or without cause, without liability for wrongful

1. The interested reader is directed to Andrew P. Morriss, *Exploding Myths: An Empirical and Economic Reassessment of the Rise of Employ-* ment At-Will, 59 Mo.L.Rev. 679 (1994), for further discussion concerning the history of the at-will rule in the United States.

discharge, provided that the employee is not otherwise protected by a contrary statutory provision. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988).

The Missouri Supreme Court has not extensively addressed the issue of the extent to which a "public policy" exception to the at-will doctrine exists in Missouri. In *Dake v. Tuell*, 687 S.W.2d 191 (Mo. banc 1985), the court examined a claim by two former employees of a retail business who were discharged after informing the employer that other employees were making false representations to customers. The claim was presented as a claim in prima facie tort. The Supreme Court affirmed the trial court dismissal of the action for failure to state a cause of action. The court stated that there can be no action for "wrongful discharge" apart from a claim based upon a statute, or a claim based upon an employment contract. *Id.* at 193. The language of the opinion was not, it appears, limited to a claim of prima facie tort, giving rise to speculation that the court was expressing a "hard line" against wrongful discharge cases by limiting recovery to cases where the worker was protected by statute. *Id.* at 194 (Blackmar, J., concurring). In *Johnson,* an employee was discharged for repeated absences from work. 745 S.W.2d at 662. Her last absence, which precipitated her termination, was an absence to attend a deposition in a civil case in which she was a party. She sought a broad "public policy" exception to the at-will doctrine. The court said:

> The court does not deem it necessary to engraft a so-called "public policy" exception onto the employment at will doctrine. In the cases cited by plaintiff the employee had the benefit of a constitutional provision, a statute, or a regulation based on a statute. *See Smith v. Arthur C. Baue Funeral Home,* 370 S.W.2d 249 (Mo.1963) (discharge of an employee for asserting the constitutional right to choose collective bargaining representatives); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App. 1985) (employee discharged for refusing to violate federal Food and Drug Administration regulations); *Beasley v. Affiliated Hospital Products,* 713 S.W.2d 557 (Mo.

> App.1986) (employee discharged for refusing to violate false advertising and federal mail fraud statutes). No statute, regulation based on a statute, or constitutional provision is implicated here.

*Id.* at 663. Although denying relief based upon a broad "public policy" exception, the court nevertheless, by citing and briefly discussing the foregoing decisions of the Court of Appeals on wrongful discharge cases, seemed to broaden the possibility of a wrongful discharge claim beyond that reflected by the language in *Dake v. Tuell.* In a footnote in *Luethans v. Washington Univ.,* 894 S.W.2d 169, 171 n. 2 (Mo. banc 1995), the Court further stated:

> A number of Missouri appellate decisions following *Boyle v. Vista Eyewear, Inc.* 700 S.W.2d 859, 870 (Mo.App.1985), have adopted a limited public policy exception to the at-will employment doctrine. The exception is stated to protect at-will employees from being discharged for "(1) refusing to violate a statute, (2) reporting violations of the law by employers or fellow employees, or (3) asserting a legal right." *Lay v. St. Louis Helicopter Airways, Inc.,* 869 S.W.2d 173, 176 (Mo.App.1993). The exception is stated to require "a constitutional provision, a statute, or a regulation based on a statute." *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo. banc 1988).

The court has, in the foregoing cases, acknowledged the existence of a "limited public policy exception" to the at-will employment doctrine. The court seems to be saying that the exception provides protection when a discharge is based upon an employee's act of reporting a violation of the law, or upon an employee's refusal to violate the law. "The law" refers specifically to a constitutional provision, a statute, or a regulation based on a statute. Thus, it seems that the court, on occasions when it had the opportunity to reassert the view it took in *Dake v. Tuell* that wrongful discharge cases can be based only on statutory provisions protecting workers from discharge, has declined to do so. We assume, therefore, the law in Missouri is as stated by the court in *Johnson* and *Luethans,* both of which acknowledge *Boyle.*

In *Boyle,* upon which Adolphsen relies, the plaintiff was an employee of an optical manufacturing company. 700 S.W.2d at 861. Her employer did not conduct all of the tests on the eyewear mandated by the Food and Drug Administration ("FDA") to ensure that the lenses had been sufficiently hardened that they would be resistant to shattering, and thus would offer more protection to the eye. Plaintiff Boyle was required by her employer to place her initials on forms indicating falsely that the tests had been performed. Boyle protested to her employer that such conduct was in violation of FDA regulations.[2] Receiving no satisfaction, she finally reported the violations to the FDA, and was terminated. *Id.* at 862. This court, recognizing a narrow public policy exception, held:

> Accordingly, where an employer has discharged an at-will employee because that employee refused to violate the law or any well established and clear mandate of public policy as expressed in the constitution, statutes and regulations promulgated pursuant to statute, or because the employee reported to his superiors or to public authorities serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy, the employee has a cause of action in tort for damages for wrongful discharge.

*Id.* at 878.

The Missouri Supreme Court, in *Johnson,* describes *Boyle* not as a whistle-blower case, but as a case where the employee refused to violate federal regulations. 745 S.W.2d at 663. Adolphsen, in contrast, does not allege that he was directed to falsely certify as to compliance with regulations, as was the plaintiff in *Boyle.* The petition fails to detail the nature of Adolphsen's complaints concerning the violation of regulations, or the content of the regulations violated. The petition also does not inform us as to whether the violations are criminal in nature, nor as to the extent of the safety risk involved in the failure to comply with regula-

tions. Adolphsen did plead that he reported the violation of Federal Aviation Regulations to Hallmark's CEO. He did not, however, plead a violation of a statute, nor did he identify a regulation which he contends was violated, nor did he identify the applicable clear mandate of public policy. He alleges merely that Hallmark did not comply with federal "safety regulations." While we assume generally that regulations governing aviation safety are very important, and will often relate to a clear mandate of public policy, we cannot say that every federal "safety regulation" involves such a clear mandate.

The federal aviation regulations have been considered in the context of a petition for wrongful discharge by the Eastern District in *Lay v. St. Louis Helicopter Airways, Inc.,* 869 S.W.2d 173 (Mo.App.1994). In *Lay,* an employee hired to fly helicopter emergency service refused to take three flights in his belief that it was dangerous due to weather conditions. The pilot's employment was terminated. *Id.* at 175. The employee alleged that taking the flights would have violated federal aviation regulations in addition to the employer's operation manual and code of ethics. The court held:

> The FAA's regulation concerning a pilot's responsibility and the "Code of Ethics" requirement that a pilot use his best judgment are not clear mandates which allow employee to fall within the public policy exception. Neither imposes a duty on an employer to refrain from terminating a pilot whose judgment calls are contrary to the employer's judgment.
>
> ... [E]ven if we were to assume he was directed to make the flights, nothing indicates that he was directed to commit a crime.... Therefore, he has not stated a claim for wrongful discharge.

*Id.* at 177.

The particular aviation regulation in that case was not seen as a clear mandate of public policy as required by the narrow ex-

---

2. It is not entirely clear as to what is meant by a "regulation based on a statute." Presumably, all regulations are promulgated pursuant to authority granted by statute. We assume, therefore, that all regulations are "based on a statute" within

the meaning of the court's language. *Boyle* uses the phrase "promulgated pursuant to statute" rather than "based on a statute," apparently deeming these phrases to be identical in meaning. 700 S.W.2d at 878.

ception announced in *Boyle. Lay* recognizes the reality that there are all kinds of regulations. A regulation may be vague (such as a regulation that "no person may operate an aircraft in a careless or reckless manner") or it may be specific (such as a requirement that a written aircraft lease shall include a "truth-in-leasing clause" in large print). A regulation may be related to safety (such as a requirement that no one shall operate an aircraft while under the influence of alcohol) or not so related (such as those related to the terms of aircraft leases). Vague regulations may not be sufficiently clear to make enforcement practicable through employment-related litigation. Those regulations not related to safety may have less significant public policy implications than those related to safety. It is possible that the regulations allegedly violated by Hallmark in this case are of such a nature as to involve clear mandates of public policy. However, Adolphsen has not so pleaded his case.

 Adolphsen has not pleaded any specific criminal violations by Hallmark, nor has he pleaded that he was directed to violate a criminal law, as was the case in *Olinger v. General Heating & Cooling Co.,* 896 S.W.2d 43 (Mo.App.1994) (plaintiff required to prepare and submit false rebate claims) and *Clark v. Beverly Enterprises–Missouri, Inc.,* 872 S.W.2d 522 (Mo.App.1994)(plaintiff discharged for complying with state law requiring that nursing home employees report reasonable suspicions of abuse of nursing home patients). Nor has he pleaded that *he* was directed to violate clear federal safety regulations. Adolphsen, by contrast, pleaded generally that *Hallmark* was violating federal safety regulations. He did not specify the regulations. There is no way, in view of the lack of specificity of the petition, to determine whether the violations amounted to serious misconduct endangering the safety of passengers or employees of the flight department or otherwise involved a clear mandate of public policy. Although the petition is to be construed liberally for the purpose of a motion to dismiss, it is necessary that each element of the cause of action be pleaded. Here, we are dealing with a narrow exception to a general rule of non-liability. When the defendant's actions are within a category not generally considered actionable (such as discharge of an at-will employee), the specific facts on which liability is based must be pleaded with particularity. *See* 71 C.J.S. Pleading § 79 (1951). Here, Adolphsen describes the regulations as "safety regulations." We conclude that this is not sufficiently specific.

### Conclusion

 Adolphsen relied on *Boyle* in drafting his petition and even referred to *Boyle* in the petition. Presumably he concluded that under *Boyle,* an allegation of any violation of a regulation by an employer is sufficient to implicate the limited public policy doctrine.[3] We believe that he is construing the language of *Boyle* too broadly.[4] We do not think that an employer's violation of *any* regulation, regardless of its content, necessarily triggers the limited public policy doctrine. Thus, we conclude that the trial court was correct in looking to whether Adolphsen had pleaded a violation of a specific regulation involving a clear mandate of public policy. Henceforth, it will not be considered sufficient merely to plead that an employee was discharged because the employee reported the violation of a regulation by an employer. A petition must specify the legal provision violated by the employer, and it must affirmatively appear from the face of the

---

3. We assume that Missouri recognizes a cause of action in "whistle-blower" cases as well as cases involving an employer dictate that the employee violate a regulation, since *Boyle* did not distinguish between the two as exceptions to the at-will doctrine. The Missouri Supreme Court has not mentioned a distinction in any case, but it also has described *Boyle* as a case where the employee refused to violate a regulation rather than as a whistle-blower case. *Johnson,* 745 S.W.2d at 663.

4. For further observations concerning the predominately narrow construction given the public policy exception the reader is directed to Thomas G. Lemley, Note, *Employment at Will Missouri Recognizes the Public Policy Exception,* 52 Mo. L.Rev. 677 (1987). *See also* Brock Rowatt, Comment, *The Public Policy Exception to Employment at Will: Can Judicial Decisions Be Used as a Source of Public Policy?,* 62 UMKC L.Rev. 325 (1994).

petition that the legal provision in question involves a clear mandate of public policy. However, *ex gratia,* because of the developmental status of this area of the law, and because no previous cases have discussed pleading requirements, we will remand this case and give Adolphsen an opportunity to amend his petition to describe the regulations he contends were the basis of his complaint to management, and to set forth why the regulations involve a clear mandate of public policy. If the trial court determines, based upon applicable law, that the amended petition states a cause of action, the matter shall be allowed to proceed. Otherwise, the court shall dismiss the claim with prejudice.

The order of the trial court is vacated. The cause is remanded for further proceedings consistent with this opinion.

All concur.