

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JAMES VAN KIRK, | ) | |
| Appellant, | ) | |
| v. | ) | WD78577 |
| | ) | |
| BURNS & McDONNELL ENGINEERING | ) | |
| COMPANY, INC., et al., | ) | FILED: March 22, 2016 |
| Respondents. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE MARCO A. ROLDAN, JUDGE

### BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
### VICTOR C. HOWARD AND GARY D. WITT, JUDGES

James Van Kirk appeals the circuit court's judgment dismissing his wrongful discharge petition against his former employer, Burns & McDonnell Engineering Company, Inc., and affiliates of Burns & McDonnell, Does 1-3 (collectively, "Burns") for failure to state a claim upon which relief could be granted. Van Kirk contends his petition adequately states two claims that he was wrongfully discharged for whistleblowing. For reasons explained herein, we reverse and remand the case for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

On appeal from a dismissal for failure to state a claim, we assume the facts alleged in the petition to be true. *Whispering Oaks Residential Facility, LLC v. Mo. Dep't of Nat. Res.*, 456 S.W.3d 46, 49 (Mo. App. 2015). Van Kirk is a professional engineer and was one of the more senior experienced engineers on his team at Burns. He has a doctorate in engineering and is licensed in Missouri, Wyoming, Texas, Illinois, and Ohio, among other states. Van Kirk was employed at Burns for approximately a decade until he was terminated in April 2009.

In 2008 and 2009, Van Kirk was working for Burns on the Frontier Boiler Project, which was based in Cheyenne, Wyoming. He worked on the project primarily out of Burns's Kansas City office and on a limited basis at Burns's office in Houston, Texas. Other Burns staff in the Houston office assisted on the project. During construction, Van Kirk worked several weeks at the Frontier Refinery in Cheyenne.

While working on the project, Van Kirk complained to his superiors at Burns that the company was not ensuring that the project's drawings, specifications, and contract documents were prepared under the direct supervision of and sealed by the responsible professional engineers licensed in the state where they were performing the work. He also complained that individuals who were not licensed professional engineers in any state were performing mechanical engineering and engineering project manager work on the project.

During the course of the Frontier Boiler Project, Burns's construction manager, who was a non-licensed engineer, planned to lift a boiler over a network of pipes that contained volatile chemicals. Van Kirk complained to the construction manager and the Vice President of Engineering about the lack of a boiler lifting plan prepared by a professional engineer licensed in Wyoming.

Despite Van Kirk's complaints, Burns proceeded with the non-licensed engineer's plan for lifting the heavy boiler over the volatile chemicals. During the lift, workers were under the chemical pipes, transferring ropes over the pipes with the heavy boiler hanging in the wind above them. This method of moving the boiler and the workers' presence under the boiler were unnecessary to the job and could have been avoided using proper engineering practices. Van Kirk complained to his superiors about the unsafe hoisting of the boiler over the network of pipes containing volatile hydrocarbons. Specifically, the boiler was not adequately secured and was not hoisted in accordance with prevailing professional standards; as a result, the client's property and the workers' safety were put at risk.

Shortly thereafter, one of Van Kirk's supervisors at Burns convened a team meeting. While looking at Van Kirk so that the rest of the team could see, the supervisor stated that complaints had been made about sealing practices. The topic was brought up in a way that clearly targeted Van Kirk. Three days later, Burns fired Van Kirk.

Van Kirk subsequently filed a petition asserting claims of wrongful discharge in violation of public policy. He alleged that he was fired because of his

3

whistleblowing about the unauthorized practice of engineering and his whistleblowing about unsafe engineering practices.[1]  Burns moved to dismiss the petition for failure to state a claim upon which relief could be granted, arguing that Van Kirk failed to identify any well-established and clearly mandated Missouri public policy violated by his discharge.  The circuit court granted the motion and issued a judgment dismissing the petition with prejudice.  Van Kirk appeals.

### STANDARD OF REVIEW

We review the grant of a motion to dismiss *de novo*.  *Vogt v. Emmons*, 158 S.W.3d 243, 247 (Mo. App. 2005).  In reviewing the petition to determine if it states a claim, we accept the allegations in the petition as true and grant the plaintiffs all reasonable inferences from those allegations.  *Campbell v. Cty. Comm'n of Franklin Cty.*, 453 S.W.3d 762, 767 (Mo. banc 2015).  We do not weigh the factual allegations to determine their credibility or persuasiveness.  *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012).  Rather, we review the petition "'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'"  *Id*. (citation omitted).

### ANALYSIS

In Point I, Van Kirk contends the court erred in dismissing his claim that he was wrongfully discharged in violation of public policy because of his

---

[1] Van Kirk also asserted two public policy discharge claims premised on Kansas City's Fair Employment Practices Ordinance.  The court dismissed the claims, and Van Kirk does not challenge their dismissal on appeal.

4

whistleblowing about the unauthorized practice of engineering that he witnessed on the Frontier Boiler Project. He argues that his petition sufficiently alleges that Burns was violating engineering laws by allowing the unauthorized practice of engineering, that he reported those violations to his supervisors, and that he was fired because of that reporting.

Generally, an at-will employee, like Van Kirk, may be discharged for any reason or no reason. *Fleshner v. Pepose Vision Inst., P.C.,* 304 S.W.3d 81, 92 (Mo. banc 2010). Missouri has adopted a public policy exception to this general rule, however. *Id.* "Public policy" refers to "'the principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good.'" *Id.* at 91 (citation omitted).

The public policy exception is narrowly drawn. *Margiotta v. Christian Hosp. Northeast Northwest*, 315 S.W.3d 342, 346 (Mo. banc 2010). Public policy "is not found 'in the varying personal opinions and whims of judges or courts, charged with the interpretation and declaration of the established law, as to what they themselves believe to be the demands or interests of the public.'" *Id.* (citation omitted). "[A] wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body." *Id.* "Absent such explicit authority, an employee's wrongful discharge claim fails as a matter of law." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 595 (Mo. banc 2013). Furthermore, "not every statute or regulation gives rise to an at-will wrongful termination action." *Margiotta*, 315 S.W.3d at

5

346. "A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires." *Id*. "The pertinent inquiry here is whether the authority clearly prohibits the conduct at issue in the action." *Id*. at 347.

The public policy exception to the at-will employment doctrine provides that an at-will employee may not be discharged: "(1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Fleshner*, 304 S.W.3d at 92. If an employer discharges an employee for either of the two reasons under the exception, then the employee has a tort claim for wrongful discharge in violation of public policy. *Id*.

Van Kirk's allegation that he was fired for reporting the unauthorized practice of engineering falls under the second theory of wrongful discharge, which is commonly referred to as "whistleblowing." *Margiotta*, 315 S.W.3d at 346-47. To adequately plead a claim of whistleblowing, an employee must demonstrate that: (1) he reported serious misconduct that constitutes a violation of the law and of well-established and clearly mandated public policy to his superiors; (2) the employer terminated his employment; and (3) there is a causal connection between his reporting and his termination. *See Keveney v. Mo. Military Academy*, 304 S.W.3d 98, 103 (Mo. banc 2010). The whistleblowing need only be a contributing

6

factor and need not be the exclusive cause of the termination. *Fleshner*, 304 S.W.3d at 94-95.

In Count I of his petition, Van Kirk alleges that he was terminated for reporting violations of the clearly-established and fundamental public policy requiring that engineering work be done only under the direct and active supervision of a licensed engineer and that drawings and other related engineering documents be properly sealed by licensed engineers. He states that this public policy is expressed in regulations contained in The Missouri Board for Architects, Professional Engineers, Professional Land Surveyors, and Landscape Architects Code of Conduct. Specifically, Van Kirk cites 20 CSR 2030-2.010(7), which provides, "Licensees shall not assist non-licensees in the unlawful practice of . . . professional engineering." He also cites 20 CSR 2030-2.010(5), which provides, "Licensees shall comply with state laws and regulations governing their practice." Van Kirk alleges that Wyoming's state laws in effect in 2008 and 2009, during Burns's work on the Frontier Boiler Project, required that persons desiring to practice engineering in Wyoming first secure a certificate of registration and provided that it was unlawful for a registrant to sign, stamp, or seal any document not prepared by him or by an employee under his supervision.[2] He also alleges that Texas, where some of Burns's work on the Frontier Boiler Project was performed,

---

[2] Van Kirk cites Wyoming Statutes Annotated §§ 33-29-124 and 33-29-129 (2009).

7

had a statute forbidding a person from engaging in the practice of engineering unless that person held a license issued under the Texas Engineering Practice Act.[3]

Van Kirk asserts that he reported to his superiors that Burns was violating the prohibition against licensed engineers' assisting non-licensed engineers in the unlawful practice of engineering by: (1) not ensuring that the Frontier Boiler Project drawings, specifications, and contract documents were prepared under the direct supervision of and sealed by the responsible professional engineers licensed in the state where they were performing work; (2) allowing employees in its Houston office that were not licensed professional engineers in any state to perform mechanical engineering and engineering project manager work on the Frontier Boiler Project and other projects; and (3) allowing a non-licensed engineer to prepare the boiler lifting plan on the Frontier Boiler Project. According to Van Kirk, these reports to his superiors about the unauthorized practice of engineering were a contributing factor in his discharge.

Burns argues that these allegations are insufficient to support a whistleblowing claim because Van Kirk is relying on violations of Wyoming and Texas law to create a Missouri wrongful discharge claim. We disagree. Van Kirk's references to the laws of other states where some of the unauthorized practice of engineering was allegedly performed do not make his wrongful discharge claim based on Wyoming and Texas law. The public policy that Burns is alleged to have violated is squarely rooted in Missouri's regulations. 20 CSR 2030-2.010(7)

---

[3] Van Kirk cites Texas Occupations Code § 1001.301 (2003).

8

contains no geographical limitation on its prohibition against licensed engineers' assisting non-licensed engineers in the unlawful practice of engineering, and 20 CSR 2030-2.010(5) does not indicate that Missouri-licensed engineers must comply only with *Missouri* state laws and regulations. Van Kirk's claim is simply that, when read together, 20 CSR 2030-2.010(5) and (7) prohibit licensees from assisting non-licensees in the practice of engineering in Missouri and in other jurisdictions.

Burns further argues that 20 CSR 2030-2.010(5) and (7) are too vague and impermissibly "force the court to decide on its own what public policy requires," citing *Margiotta*, 315 S.W.3d at 346. Again, we disagree. The public policy reflected in 20 CSR 2030-2.010(7)'s prohibition against licensees assisting non-licensees in the practice of engineering and 20 CSR 2030-2.010(5)'s requirement that licensed engineers follow state laws and regulations is clear: Licensed engineers are not allowed to delegate engineering tasks to unlicensed engineers in Missouri or elsewhere. There is nothing vague about this public policy mandate. *See Farrow*, 407 S.W.3d at 597 (holding that a nurse sufficiently pled a public policy wrongful discharge claim when she alleged that she was fired for complaining about the delegation of nursing procedures to non-nurses in violation of provisions of the Nursing Practice Act).

Count I of Van Kirk's petition states a claim for wrongful discharge in violation of public policy based on his whistleblowing about the unauthorized practice of engineering. Point I is granted.

In Point II, Van Kirk contends the court erred in dismissing Count II of his petition in which he alleges that he was wrongfully discharged because of his whistleblowing about the unsafe hoisting and moving of the boiler on the Frontier Boiler Project. In his petition, Van Kirk alleges that he was terminated, in part, after he complained to his supervisors at Burns about the unsafe hoisting of the boiler over the network of pipes containing volatile hydrocarbons, which he asserts put the client's property and the workers' safety at risk. According to Van Kirk, 29 C.F.R. § 1926.753 (2008), an OSHA regulation, prohibited workers from being present under suspended loads except under circumstances not present in this case.

Van Kirk further alleges that his complaint to his supervisors at Burns about the unsafe practices was required and protected under Missouri law. Specifically, he cites 20 CSR 2030-2.010(6), which provides:

> Licensees at all times shall recognize that their primary obligation is to protect the safety, health, property, or welfare of the public. If the professional judgment is overruled under circumstances where the safety, health, property, or welfare of the public are endangered, they shall notify their employer or client and other authority as may be appropriate.

Van Kirk alleges that, because his complaint was required and protected under this regulation, Burns's discharging him for it violated public policy.

In response, Burns argues that 20 CSR 2030-2.010(6) is too vague to support a claim for wrongful discharge in violation of public policy. Burns contends that the regulation is similar to the regulations found insufficiently clear in *Lay v.*

10

*St. Louis Helicopter Airways, Inc.*, 869 S.W.2d 173 (Mo. App. 1993). In *Lay*, a pilot was discharged from his employment after he refused to make three flights in bad weather. *Id*. at 175. He alleged that his discharge was wrongful under the public policy exception because an FAA regulation made the pilot the "final authority" as to the operation of the aircraft, and the Code of Ethics of the Helicopter Association International required pilots to use their "best judgment" to insure "maximum safety" at all times. *Id*. at 177. The court disagreed, finding that the regulation and Code of Ethics requirement were not "clear mandates which allow employee to fall within the public policy exception," as "[n]either imposes a duty on an employer to refrain from terminating a pilot whose judgment calls are contrary to the employer's judgment." *Id*.

This case is distinguishable from *Lay*. Unlike the regulations in *Lay*, the regulation in this case does not simply provide for engineers to make judgment calls regarding safety. Rather, 20 CSR 2030-2.010(6) specifically directs that, if those judgment calls are overruled, the engineers shall report their safety concerns to their employer, client, or other authority. Van Kirk is not alleging that his discharge was wrongful because Burns disagreed with his judgment call regarding safety issues; he is alleging that his discharge was wrongful because Burns fired him for doing exactly what the regulation required him to do -- report his safety concerns to Burns. The public policy reflected in 20 CSR 2030-2.010(6) is clear: Licensed engineers are not only encouraged, but required, to report safety concerns

11

whenever their professional judgment is overruled on a project. Firing a licensed engineer for making a required report violates this public policy.[4]

Count II of Van Kirk's petition states a claim for wrongful discharge in violation of public policy for his whistleblowing about the unsafe hoisting and moving of the boiler on the Frontier Boiler Project. Point II is granted.

### CONCLUSION

The circuit court's judgment dismissing Counts I and II of Van Kirk's petition for failure to state a claim is reversed. The case is remanded for further proceedings.

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

---

[4] *See Fleshner*, 304 S.W.3d at 96-97 (holding that, where Missouri's minimum wage law makes it a crime to fire employees who participate in overtime compensation investigations by state officials, the public policy reflected in that law is that employees should be encouraged to cooperate with government labor investigators; therefore, an employee who was terminated after speaking with federal investigators about overtime compensation made a submissible case of wrongful discharge).