Daniel MARGIOTTA, Appellant,

v.

CHRISTIAN HOSPITAL NORTHEAST NORTHWEST d/b/a Christian Hospital, and BJC Health System, Respondents.

No. SC 90249.

Supreme Court of Missouri, En Banc.

Feb. 9, 2010.

Ferne P. Wolf, D. Eric Sowers, M. Beth Fetterman, Sowers & Wolf, LLC, St. Louis, for Appellant.

JoAnn T. Sandifer, Mark G. Arnold, Michael P. Nolan, Christine F. Miller, Husch Blackwell Sanders LLP, for St. Louis, for Respondents.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

Daniel J. Margiotta, an at-will medical image technician, brought a wrongful termination action against his former employer, Christian Hospital Northeast Northwest ("Hospital"), alleging that the Hospital terminated him for reporting violations of federal and state regulations. The trial court granted summary judgment in favor of the Hospital. The judgment is affirmed.

## II. Facts and Procedural Posture

### A. The Procedure for Summary Judgment 1

The required procedure for summary judgment motions is found in Rule 74.04. The party seeking summary judgment must attach "a statement of uncontroverted material facts ... [stated] *with particularity in separately numbered paragraphs*" and supported "with specific references to the pleadings, discovery, exhibits, or affidavits." Rule 74.04(c)(1) (emphasis added). The responding party must then "admit or deny each of the movant's factual statements in numbered paragraphs" based on the record. Rule 74.04(c)(1). The response "may also set forth additional material facts that remain in dispute presented in consecutively numbered paragraphs," to which the movant must respond with a supplemental statement that controverts each factual assertion from the record. *Id.* "A denial may not rest upon the mere allegations or denials of the party's pleading." Rule 74.04(c)(2). This procedure is not discretionary; it is mandatory and must be followed.

### B. Uncontroverted and Controverted Facts

It is uncontroverted that Daniel Margiotta was an at-will medical technician in the Hospital's CT scan unit from April 2005 until his termination on December 8, 2007. Although the remaining facts are controverted, they are not material to the

judgment as a matter of law and serve only to provide context for this case.

The Hospital alleged that it terminated Margiotta because he had a violent outburst on December 6, 2007. In that incident, Margiotta reportedly yelled at co-workers in front of a patient and threw a pillow across the room, knocking a canister off the wall. Margiotta denies that the incident was violent or that he engaged in aggressive behavior.

In contrast, Margiotta alleges he was terminated because he continuously reported incidents of safety violations pertaining to patient care to his supervisors. Margiotta claims that three separate incidents led to his termination. First, in June or July 2005, he reported to supervisors that patients were being left unattended in the Hospital's hallways. Second, during the fall of 2005, he complained that the Hospital would use only one orderly to transfer a patient from the stretcher to the CT scanning table, which, in one incident, led to a patient being dropped. Third, sometime between July and September 2005, he reported that a pregnant woman underwent a CT scan, a practice he considered unsafe.

Although the dates of these reports predate his termination by almost two years, Margiotta argued that the Hospital retaliated against him for reporting these incidents by terminating him. Accordingly, Margiotta brought a cause of action against the hospital for wrongful termination of an at-will employee under the following regulations:

Margiotta points to a federal and a Missouri regulation as being at issue:

The patient has the right to receive care in a safe setting. 42 C.F.R. 482.13(c)(2).

Each hospital shall develop a mechanism for the identification and abatement of occupant safety hazards in their facilities. Any safety hazard or threat to the general safety of patients, staff or the public shall be corrected. 19 C.S.R. 30–20.108(3).

Christian Hospital filed a motion for summary judgment arguing, first, that Margiotta did not prove that the reporting of violations was the exclusive cause of his termination and, second, that the regulations at issue did not constitute clear mandates of public policy.

The trial court granted summary judgment on both grounds. This Court has jurisdiction. Mo. Const. art. V, sec. 10.

### III. Analysis

#### A. Standard of Review

 This Court reviews the trial court's granting of summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). An appellate court can sustain the trial court's judgment on any ground as a matter of law, even if different than one posited in the order granting summary judgment. *ITT Commercial Fin.,* 854 S.W.2d at 387–88.

#### B. The At–Will Employment

 The at-will employment doctrine is well-established Missouri law. *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661 (Mo.1988); *Dake v. Tuell,* 687 S.W.2d 191 (Mo.1985); *Amaan v. City of Eureka,* 615 S.W.2d 414 (Mo.1981). Absent an employment contract with a "definite statement of duration … an employment at will is created." *Luethans v. Washington University,* 894 S.W.2d 169 (Mo.1995); *McCoy v. Spelman Memorial Hosp.,* 845 S.W.2d 727 (Mo.App.1993). An employer may terminate an at-will employee "for any reason or for no reason." *Crabtree v. Bugby,* 967 S.W.2d 66, 70 (Mo. banc 1998);

see also *McCoy v. Caldwell County,* 145 S.W.3d 427, 429 (Mo. banc 2004); *Hansome v. Northwestern Cooperage Co.,* 679 S.W.2d 273, 275 n. 2 (Mo. banc 1984); *Johnson,* 745 S.W.2d at 662; *Dake,* 687 S.W.2d at 192–93; *Amaan,* 615 S.W.2d at 415. The at-will doctrine is "[r]ooted in freedom of contract and private property principles, designed to yield efficiencies across a broad range of industries." James A. Sonne, *Firing Thoreau: Conscience and At–Will Employment,* 9 U. Pa. J. Lab. & Emp. L. 235 (2007); Richard A. Epstein, *In Defense of the Contract at Will,* 51 U. Chi. L.Rev. 947, 953–58 (1984).

However, the at-will doctrine is limited in certain respects. An employer cannot terminate an at-will employee for being a member of a protected class, such as "race, color, religion, national origin, sex, ancestry, age or disability." Section 213.055, RSMo. Supp.2005. In addition, Missouri recognizes the public-policy exception to the at-will-employment rule. *Fleshner v. Pepose Vision Institute, Inc.,* 304 S.W.3d 81, 92 (Mo. banc 2010); *Adolphsen v. Hallmark Cards, Inc.,* 907 S.W.2d 333 (Mo.App.1995).

### C. The Public Policy Exception for Wrongful Discharge

The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn. An at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties. *See Porter v. Reardon Mach. Co.,* 962 S.W.2d 932 (Mo.App.1998); *See also Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App.1985).[1]

### 1. Well Established and Clearly Mandated Public Policy

It is well-settled that public policy is not found "in the varying personal opinions and whims of judges or courts, charged with the interpretation and declaration of the established law, as to what they themselves believe to be the demands or interests of the public." *In re Rahn's Estate,* 316 Mo. 492, 501, 291 S.W. 120, 123 (Mo.1926). Therefore, a wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body. *See Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo. banc 1988). Absent such explicit authority, the wrongful discharge action fails as a matter of law. *Id.* Moreover, not every statute or regulation gives rise to an at-will wrongful termination action. *See, e.g., Lay v. St. Louis Helicopter Airways, Inc.,* 869 S.W.2d 173 (Mo.App.1993).

A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires. *See id.* Such vagueness would also cause "the duties imposed upon employers [to] become more vague" and create difficulties "for employers to plan around liability based on the vagaries of judges." Timothy Heinz, *The Assault on the Employment at Will Doctrine,* 48 Mo. L.Rev. 855, 876 (1983).

### 2. Reporting Violations of Law: Whistleblowing

Margiotta claims that he falls into the second theory of wrongful discharge, that of reporting violations of law or public

---

1. Retaliation for filing a worker's compensation action is also prohibited; however, it is controlled by specific statutory authority and is distinct from other wrongful discharge actions.

policy to his superiors, commonly referred to as "whistleblowing." *Lynch v. Blanke Baer & Bowey Krimko, Inc.* 901 S.W.2d 147, 150 (Mo.App.1995). For Margiotta to prevail, he must show that he "reported to superiors or to public authorities *serious* misconduct that constitutes a violation of the law and of . . . *well established* and *clearly mandated* public policy." *Id.* (emphasis added).

██ "The mere citation of a constitutional or statutory provision in a [pleading] is not by itself sufficient to state a cause of action for retaliatory discharge, the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge." 82 Am.Jur.2d § 61 *citing Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991); *See generally Johnson,* 745 S.W.2d at 663. Generally, there is no whistleblowing protection for an employee who merely disagrees personally with an employer's legally-allowed policy. Daniel P. Westman, *Whistleblowing the Law of Retaliatory Discharge,* 112(1991). *See also* 82 Am.Jur.2d § 54.

██ However, the violation of the applicable authority need not result in criminal sanctions. Whether the violation results in civil fines, injunctions, or disciplinary action against a professional license is immaterial to the wrongful discharge action. Moreover, as our companion opinion *Fleshner v. Pepose Vision Institute, Inc.,* announced, "there is no requirement that the violations that the employee reports affect the employee personally, nor that the law violated prohibit or penalize retaliation against those reporting its violation." 304 S.W.3d at 97. The pertinent inquiry here is whether the authority clearly prohibits the conduct at issue in the action.

An illustration of this principle was discussed in *Lay v. St. Louis Helicopter Air-*ways, Inc., where a helicopter pilot alleged that he was terminated because he refused, against his employer's wishes, to make three flights he believed to be in violation of FAA regulations. 869 S.W.2d at 175. The regulation he cited mandated that "member's pilots will exercise their best judgment to insure a maximum safety factor at all times." *Id.* The court found that regulation too vague and noted that the pilot did not cite to any specific regulation showing the flights unsafe. *Id.*

## IV. Margiotta's Claim

██ The two regulations that Margiotta cites are similarly vague statements, and he directs this Court to no specific regulations that proscribe the conduct at issue in the allegedly reported incidents.

Margiotta relies, in part, on *Boyle v. Vista Eyewear, Inc.* the originating authority of the wrongful discharge action, 700 S.W.2d 859 (Mo.App.1985). *Boyle* is inapposite to the facts and regulations present. In that case, an eye glass manufacturing employer instructed one of its at-will employees to never perform tests to ensure the lens would not shatter so that the company could turn around orders faster. *Id.* at 862. A Food and Drug Administration regulation "require[d] all eye glass manufacturers to test all glass lenses for their resistance to breaking or shattering before such lenses may be sold or distributed to the public." *Id.* The employee consistently complained to her employer, refused to comply with the order, and reported the violation to the FDA and OSHA. She was ultimately terminated. *Id.* at 863. The employee in *Boyle* reported a clear violation of a regulation that explicitly forbade the actions of the eyeglass manufacturer. This did not occur in the instant.

Margiotta first relies on a federal regulation. "The patient has the right to receive care in a safe setting." 42 C.F.R. 482.13(c)(2). The Department of Health and Human Services enacted this regulation pursuant to federal statutory authority. *See* 42 U.S.C. §§ 1302, 1395hh, and 1395rr (2009). This regulation clearly empowers *patients* to assert *their* right to safety, and reported cases in other jurisdictions recognize this.[2] The regulation is personal to the patient. No textual part grants protection to employees or requires specific conduct by an employee such as an affirmative duty to report violations. Most importantly, it does not specifically proscribe the three incidents Margiotta reported. This regulation is too vague to support Margiotta's wrongful discharge action.

 The second regulation Margiotta cites was enacted by Missouri's Department of Health and Senior Services pursuant to statutory authority. Sections 192.006 and 197.080, RSMo. 2000, and 197.154, RSMo. Supp.2005. The regulation states that "[e]ach hospital shall develop a mechanism for the identification and abatement of occupant safety hazards in their facilities. Any safety hazard or threat to the general safety of patients, staff or the public shall be corrected." 19 C.S.R. 30–20.108(3).

This regulation is not applicable in the present case. The regulation appears in a section titled "Fire Safety, General Safety and Operating Features." *Id.* The other parts of the regulation speak to "disaster plans" and hospital construction and remodeling. 19 C.S.R. 30–20.108(1)–(4). This regulation clearly deals with building safety, not patient treatment. Margiotta's "mere citation" to this regulation without a demonstration of how the reported conduct violated it cannot form the basis for a wrongful discharge action.

What Margiotta asks this Court to do is to grant him protected status for making complaints about acts or omission he merely believes to be violations of the law or public policy. The public policy exception to the at-will doctrine is not so broad. A legal duty will not be forced upon parties who have agreed to an at-will relationship; nor will an additional duty be forced upon parties who have agreed to a contractual employment relationship absent a sufficiently definite statute, regulation based on statute, constitutional provision, or rule promulgated by a government body that clearly gives notice to the parties of its requirements. The Hospital was entitled to judgment as a matter of law.

### V. Conclusion

The trial court's judgment is affirmed.

RUSSELL, WOLFF, BRECKENRIDGE, FISCHER and STITH, JJ., concur; TEITELMAN, J., dissents in separate opinion filed.

RICHARD B. TEITELMAN, Judge, dissenting.

The principal opinion holds that Margiotta's wrongful discharge claim fails because the regulations cited do not proscribe the specific conduct Margiotta reported to his superiors. Such specificity is not required. What is required is that the regulation express a clear and important public policy. The regulations

---

**2.** *See NCED Mental Health, Inc. v. Kidd,* 214 S.W.3d 28, 36 (Tex.App.El Paso 2006) (Patient bringing suit and citing violation of regulation due to rape by hospital staff while medicated.); *Hubbs v. Alamao,* 360 F.Supp.2d 1073 (C.D.Cal.2005) (mental patient pled regulation in section as part of an action under 42 U.S.C. 1983 due to disclosure of patient records).

in this case express a clear and important public policy requiring hospitals to take steps to ensure patient safety. Procedures that result in patients being dropped off tables unquestionably involve matters included in the hospital's regulatory obligation to provide a safe environment for its patients. Therefore, I respectfully dissent.

In *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 871 (Mo.App.1985), the court held that the public policy exception to at-will employment "provides that an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy has a cause of action against the employer for wrongful discharge." The clear mandate of public policy finds its source "in the letter and purpose of a constitutional, statutory, or regulatory provision or scheme ..." *Kirk v. Mercy Hosp. Tri–County,* 851 S.W.2d 617, 621 (Mo.App.1993)(quoting *Boyle,* 700 S.W.2d at 871). There is nothing in this longstanding formulation of the wrongful discharge action requiring a plaintiff to identify a regulation specifically proscribing the reported conduct. To the contrary, the cases recognize that a wrongful discharge action can be based on reported conduct that is prohibited by not only the "letter" of the law but also by the "purpose" of the law. This formulation of the wrongful discharge action recognizes the reality that many valid statutes or regulations provide general guidelines designed to regulate the unpredictable and nearly infinite array of specific fact patterns that fit within the regulatory purpose of the law. By requiring a plaintiff to identify a regulation that specifically proscribes the reported conduct, the principal opinion eliminates wrongful discharge actions based on conduct that, while not specifically proscribed by a regulation, is nonetheless clearly contrary to the purpose of the regulation. In these cases, the general

statute or regulation, and therefore the definition of "public policy," becomes clear when applied to the facts of a particular case.

The principal opinion avoids this conclusion by relying in large part on *Lay v. St. Louis Helicopter Airways, Inc.,* 869 S.W.2d 173 (Mo.App.1993), to conclude that the regulation in this case is "too vague" and that Margiotta's claim fails because he does not identify a regulation specifically proscribing the conduct at issue. *Lay* did not hold that the regulations at issue in that case were "too vague" to support a wrongful discharge action. Instead, *Lay* held that the pilot could not state a claim for wrongful discharge because the regulation did not (1) specifically prohibit the employer from discharging the pilot and (2) did not subject the pilot to criminal sanctions if he engaged in the activity required by the employer. *Id.* Neither of these conclusions is valid.

*Lay* cited no authority for this requirement that the regulation underlying a wrongful discharge action specifically must prohibit the employer from discharging the employee. If the regulation must prohibit the employer from discharging the employee, there would be no need for a common law wrongful discharge action because the employee's "remedy would flow from any such alleged violation" of the regulation. *Kirk,* 851 S.W.2d at 620.

Similarly, there is no requirement that the regulation must subject the employee to criminal sanctions. Instead, as stated in *Boyle,* the regulation must express a clear mandate of public policy. While criminal sanctions are one means of enforcing public policy, public policy also can be enforced through mechanisms such as civil fines, injunctions or disciplinary action against a professional license. *See, e.g., Kirk,* 851 S.W.2d at 621 (failure to comply

with nursing regulations exposed nurse to professional license discipline). The rationale in *Lay* is inconsistent with the purpose of the wrongful discharge cause of action and should not be followed.

In this case, the federal and state regulations cited by Margiotta set forth a clear mandate that hospitals adopt procedures to ensure their patients' safety. These general safety concerns are illustrated specifically by Margiotta's allegation that unsafe patient transfer practices caused a patient to be dropped off a table. There is no dispute that dropping patients poses a threat to patient safety. The importance of these regulations is magnified because many patients must rely entirely on the hospital employees to ensure that their right to basic personal safety and sustenance is met. An unconscious or incapacitated patient may be in no position to assert his or her right to safety or even recognize that safety has been compromised. Margiotta reported violations of safety regulations that constitute clear mandates of public policy. He should be given an opportunity to prove his case to a jury. I would reverse the grant of summary judgment to the defendants in this case.