

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **KIM WELCH,** | **WD77158** |
| **Appellant,** | **OPINION FILED:** |
| **v.** | **September 23, 2014** |
| **BOONVILLE NO. 2, INC,** | |
| **d/b/a RIVERDELL CARE CENTER,** | |
| **Respondent.** | |

**Appeal from the Circuit Court of Cooper County, Missouri**
**The Honorable Robert L. Koffman, Judge**

Before Division Two:  Victor C. Howard, P.J.,
James Edward Welsh, and Anthony Rex Gabbert, JJ.

Kim Welch appeals the circuit court's grant of summary judgment in favor of Boonville

No. 2, Inc., doing business as Riverdell Care Center ("Riverdell"), on Welch's claim that she was

wrongfully discharged from her employment with Riverdell because she made complaints to her

employer that a dog was allowed to be in the kitchen area of her work place in violation of a

sanitation regulation.  Welch asserts that the circuit court erred in granting summary judgment

because (1) genuine issues of material fact existed as to whether a contributing factor in her

discharge was due to her complaints to Riverdell's administrator about the Director of Nursing's

dog repeatedly entering the dining and kitchen areas of the facility in violation of a sanitation

regulation, (2) the court erroneously determined that her complaints about Riverdell's violation

of the sanitation regulation did not invoke a clear mandate of public policy, (3) the court erroneously determined that, as a matter of law, Welch's complaints to Riverdell's administrator did not constitute protected whistle-blowing. We affirm the circuit court's grant of summary judgment in Riverdell's favor.

When considering appeals from summary judgments, we view the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record established that Riverdell provided care for elderly and disabled individuals. The facility administrator was Monte Hanson, and the Director of Nursing was Mary Luscombe. In Hanson's absence, Luscombe would serve as the acting administrator for the facility.

Welch was employed as a dietary aid at Riverdell, and her duties included helping to prepare meals, serving resident meals, and washing dishes. During Welch's orientation, Hanson explained Missouri's nursing home regulations, including sanitation regulations regarding animals, to Welch. According to Welch, she was told that animals were not allowed in the kitchen or in the dining room during meal times. Welch said that she understood that she could be written up and fired if an animal was found in the kitchen or in the dining room during meal times. Welch agreed that she was responsible for keeping animals out of the kitchen and out of the dining area at meal times.[1] Indeed, Welch acknowledged that Riverdell had two cats at the

---

[1] In her brief, Welch contends that she "controverts" that it was her responsibility to keep animals out of the dining room or kitchen. In response to Riverdell's Statement of Uncontroverted Material Facts, Welch specifically said, "The general statement that Plaintiff [Welch] was responsible to keep animals out of the kitchen and out of the dining area at meal time is uncontroverted."

facility and that she had no problem with being responsible for keeping them out of the kitchen and out of the dining area at meal times.

In March 2008, Luscombe brought a puppy to the facility.[2] According to Welch, the dog was constantly in the dining area. Welch also said that the dog would enter the kitchen on numerous occasions. According to Welch, she would remove the dog from the kitchen or dining room, put the dog in Luscombe's office, and shut the door. Welch then said that shortly thereafter, the dog would be "right back down there during meal time." Welch said that it was "a constant back and forth." Welch made numerous complaints about the dog to both Luscombe and Hanson and requested that Luscombe should be responsible for keeping the dog out of the dining room and kitchen. Welch also requested that the dog be locked in a kennel, on a leash, or "chained up." Riverdell did not agree to Welch's demands and instead continued to require Welch to keep the dog out of the kitchen. In her deposition, Welch admitted that, although she did not want the responsibility, she did keep the puppy out of the kitchen. Although Welch believed that dogs in the kitchen area would compromise sanitation conditions, she admitted that, during the entire time she worked at Riverdell, she did not believe that hygiene or food sanitation was ever compromised at the facility because of the dog entering the kitchen.

Welch never reported or complained to outside authorities about the dog. When she was asked by a State investigator about the dog, Welch said, "I plead the fifth." Welch claimed that she would have been fired if she talked to an investigator and said that Hanson told her not to "volunteer" information to the State. Welch admitted, however, that she was told not to lie to the investigator.

---

[2]Riverdell asserts that the dog was to be used as a therapy pet at the residential facility, but Welch contends that the dog was Luscombe's personal pet.

On July 27, 2008, Welch was fired from her job at Riverdell for being insubordinate.[3] On December 3, 2010, Welch filed a petition for damages claiming that she was wrongfully discharged from her employment with Riverdell because she made complaints to her employer that a dog was allowed to be in the kitchen area of her work place in violation of a sanitation regulation, 19 CSR 30-87.030(9). Riverdell filed a motion for summary judgment asserting that Welch's petition failed to state a claim upon which relief could granted. In particular, Riverdell contended that Welch's allegations did not fit "within the narrowly-construed public policy exception to the employment-at-will doctrine." The circuit court granted Riverdell's motion for summary judgment. In particular, the circuit court found that Welch had not complained about a violation of a clear mandate of Missouri public policy and that she did not complain to an outside authority about the dog. Welch appeals.

Our review of a summary judgment is *de novo*. *ITT Commercial*, 854 S.W.2d 371 at 376. We review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *Id*. "The propriety of summary judgment is purely an issue of law." *Id*. We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id*. at 380; Rule 74.04. A "defending party" may establish a right to judgment by showing:

> (1) facts that negate any one of the claimant's elements facts [sic], (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no

---

[3] The facts surrounding Welch's discharge are disputed by the parties.

genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Commercial*, 854 S.W.2d at 381 (emphasis omitted).

On appeal, Welch raises three points complaining about the circuit court's granting summary judgment in Riverdell's favor. Because Welch's second point is dispositive, we need not address Welch's remaining points on appeal. The circuit court granted summary judgment in favor of Riverdell because Riverdell demonstrated that Welch would be unable to prove her claim for wrongful discharge in that she could not prove a violation of a clear mandate of public policy. In her second point on appeal, Welch asserts that the circuit court erroneously determined that her complaints about Riverdell's violation of 19 CSR 30-87.030(9) did not invoke a clear mandate of public policy.

The employment-at-will doctrine is well-established under Missouri law, and, under that doctrine, an employer may terminate an at-will employee "'for any reason or for no reason.'" *Margiotta v. Christian Hosp. Northeast Northwest*, 315 S.W.3d 342, 345-46 (Mo. banc 2010) (citation omitted). Missouri, however, recognizes "the public-policy exception to the at-will-employment rule." *Id*. at 346. "The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn." *Id*. "An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy . . . or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 92 (Mo. banc 2010). Thus, to prevail on a claim for wrongful discharge under the public policy exception, an employee must prove that she "'reported to superiors or to public authorities serious misconduct

5

that constitutes a violation of the law and of . . . well established and clearly mandated public policy.'" *Margiotta*, 315 S.W.3d at 347 (citation and emphasis omitted).

To meet the standard of a well established and clear mandate of public policy, the public policy must be "based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body." *Id*. at 346. "Absent such explicit authority, the wrongful discharge action fails as a matter of law." *Id*. "[N]ot every statute or regulation gives rise to an at-will wrongful termination action." *Id*. "A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires." *Id*. "It is well-settled that public policy is not found 'in the varying personal opinions and whims of judges or courts, charged with the interpretation and declaration of the established law, as to what they themselves believe to be the demands or interests of the public.'" *Id*. (quoting *In re Rahn's Estate*, 291 S.W. 120, 123 (Mo. 1926)).

Welch relies on single sanitation standard set forth in the regulations promulgated by the Missouri Department of Health and Senior Services as the basis for her claim that she reported a violation of a well-established and clear mandate of public policy. That regulation relates to sanitation requirements for food service in long-term care facilities and provides:

> Live animals, including birds and turtles shall be excluded from the food storage service and preparation areas. This exclusion does not apply to edible fish, crustacea, shellfish or to fish in aquariums. Patrol dogs accompanying security or police officers, or service or guide dogs assisting residents or visitors shall be permitted in dining areas. Other dogs and cats may be permitted in the dining area if food service sanitation is not compromised and residents do not object.

19 CSR 30-87.030(9).

6

During Welch's orientation, Riverdell's administrator explained Missouri's nursing home regulations, including sanitation regulations regarding animals, to Welch. According to Welch, she was told that, pursuant to a state regulation, animals were not allowed in the kitchen or in the dining room during meal times. Welch said that she understood that she could be fired if a dog was found in the kitchen or in the dining room during meal times. Further, Welch acknowledged that it was her responsibility for keeping animals out of the kitchen and out of the dining area at meal times.

In regard to the dog at the facility, Welch said that the dog would enter the kitchen on numerous occasions. But, according to Welch, on each occasion, she would remove the dog from the kitchen or dining room, put the dog in Luscombe's office, and shut the door. Although Welch said that the dog would return shortly thereafter, she said that it was "a constant back and forth" with removing the dog from the kitchen or dining room. Welch said that she made numerous complaints about the dog to both Luscombe and Hanson and requested that Luscombe should be responsible for keeping the dog out of the dining room and kitchen. Welch also requested that the dog be locked in a kennel, on a leash, or "chained up." Hanson did not agree to Welch's demands and instead continued to require Welch to keep the dog out of the kitchen. In her deposition, Welch admitted that, although she did not want the responsibility, she did keep the dog out of the kitchen. When asked in her deposition whether she ever allowed the dog to be in the kitchen, Welch responded "No." Further, although Welch said that she believed a dog in the kitchen area would compromise sanitation conditions, she admitted that, during the entire time that she worked at Riverdell, she did not believe that hygiene or food sanitation was ever compromised at the facility because of the dog entering the kitchen.

7

To prevail on her claim for wrongful discharge under the public policy exception, Welch had to prove that she "'reported to superiors or to public authorities serious misconduct that constitutes a violation of the law and of . . . well established and clearly mandated public policy.'" *Margiotta*, 315 S.W.3d at 347 (citation and emphasis omitted).  The facts establish that Riverdell enforced the policy of excluding the dog from the kitchen by giving Welch the responsibility of complying with the regulation.  Welch admitted that she was directed to remove the dog from the kitchen and dining areas.  Riverdell, therefore, had standards in place for excluding live animals "from the food storage service and preparation areas," and Welch admitted that she complied with the regulation by removing the dog from the kitchen area each time it entered.  This is not a situation in which Riverdell instructed Welch to violate the regulation and Welch refused.  Instead, Welch merely complains about Riverdell's manner of compliance with the regulation by assigning her with the task of keeping the dog out of the kitchen as opposed to kenneling or tethering the dog, which she argues would be more efficient.  Thus, she is "whistleblowing" on Riverdell for complying with the regulation but not in the manner she recommends.

There is no dispute that the regulation requires that the dog be excluded from food storage service and preparation areas.  The only disagreement by Welch is how the dog should be excluded from those areas.  The regulation does not mandate any particular procedure or practice for excluding the dog but merely instructs the facility that it should exclude animals from those areas.  Riverdell was aware of its responsibilities pursuant to the regulation and gave Welch the responsibility of excluding the dog from the kitchen or dining room.  Welch begrudgingly complied with the regulation by removing the dog each time it entered the kitchen.  Thus, even if it is conceded that the regulation provides a clear mandate requiring the exclusion of animals

8

from the kitchen, the regulation provided no such mandate on the manner of exclusion. The manner of exclusion, therefore, was a matter of employer policy not public policy.

Moreover, one of the alleged purposes of having an animal at the facility was for it to have interactions with residents. Caging or tethering the animal would seem to inhibit such interaction. At the intersection of competing policies (sanitation and companionship), it would appear that there is not a well-established and clearly mandated public policy, and we, therefore, are hesitant to speculate concerning the best interest of the public concerning this matter.

Riverdell established its right to summary judgment by showing that Welch would not be able to prove, as a matter of law, a violation of a law and of a well-established and clearly mandated public policy. *Margiotta*, 315 S.W.3d at 347. We, therefore, affirm the circuit court's granting summary judgment in favor of Riverdell.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

9