**Latoya BALLARD, Relator,**

**v.**

**The Honorable Ellen Levy SIWAK, Respondent.**

**ED 105001**

Missouri Court of Appeals, Eastern District, **WRIT DIVISION TWO.**

Filed: June 20, 2017

Kevin Dolley, 2726 South Brentwood Blvd., St. Louis, MO 63144, for relator.

Julia Hodges Stubhard, Adam Hirtz, 222 South Central, Suite 901, St. Louis, MO 63105, for respondent.

Gary M. Gaertner, Jr., Presiding Judge

### Introduction

The issue in this case is whether an employer may demand as a condition of continued employment that an employee withdraw a full order of protection that a trial court previously granted after a hearing in which the court found a credible threat to the employee's physical safety. We find that such an action violates the public policy exception to the at-will employment doctrine, in that the Missouri legislature has established a clear mandate of public policy to protect victims of domestic violence in this state. Latoya Ballard (Relator) filed a petition for writ of prohibition or mandamus, seeking to compel the Respondent, the Honorable Ellen Levy Siwak, to vacate her order dismissing Count I of Relator's petition for wrongful discharge. We issued a preliminary order in prohibition, which we now make permanent.

## Background

The facts here, as set forth by Relator and taken as true,[1] are as follows. Relator began working for Rancho Manor Healthcare and Rehabilitation Center, LLC (Rancho Manor) in September of 2014 as a nurse. Later that month, Rancho Manor also hired Jason Henderson (Henderson) as a floor nurse. Henderson and Relator were in a romantic relationship from 2008 through June of 2014, and they had two children together. On October 11, 2014, Henderson assaulted Relator in her home, causing injuries to her and one of her children. Law enforcement arrested Henderson and Relator obtained an ex parte order of protection against Henderson. The next day, Relator provided her direct supervisor and the Compliance Nurse at Rancho Manor with a copy of the ex parte order of protection, and Relator's direct supervisor stated that she would arrange a schedule so Relator and Henderson did not work together. Later that month, Rancho Manor promoted Henderson to Assistant Director of Nursing, a supervisory position over all nurses, including Relator.

On October 23, 2014, a trial court entered a full, one-year order of protection against Henderson after a court hearing. The full order of protection prohibited Henderson from entering Relator's place of employment while she was present. Relator again provided her direct supervisor with a copy of the full order of protection. Relator expressed concerns that Henderson was now one of her supervisors and requested Rancho Manor develop an action plan to prevent interaction between Henderson and Relator. Rancho Manor never informed Relator of any proposed action plan.

On December 19, 2014, Relator called into Rancho to request a sick day. Henderson answered the telephone and was verbally abusive to Relator, and he threatened to file a complaint against her nursing license if she did not report for work. Relator came to work. On her way home, Relator called her direct supervisor who reprimanded her for coming onto Rancho Manor premises while Henderson was present. On December 23, 2014, Rancho Manor's Compliance Nurse requested that Relator withdraw her full order of protection against Henderson. Relator refused. Later that same day, Rancho Manor's Compliance Nurse again called to request Relator withdraw her full order of protection against Henderson, saying that Rancho Manor would not place Relator on the work schedule until she withdrew her full order of protection against Henderson. Relator left her position at Rancho Manor because Rancho Manor would no longer place her on the work schedule unless she withdrew her full order of protection against Henderson.

Relator filed a petition for damages against Rancho Manor claiming, in Count I, wrongful discharge for violation of the public policy outlined in Missouri's Adult Abuse Act (the MAAA), which encourages individuals to obtain orders of protection to ensure their safety.[2] Rancho Manor filed a motion to dismiss Count I of Relator's petition, asserting Relator failed to state a claim upon which relief could be granted in that the MAAA does not constitute the

---

1. Moynihan v. City of Manchester, 203 S.W.3d 774, 775 (Mo. App. E.D. 2006) (following motion to dismiss, reviewing court takes plaintiff's allegations as true and liberally grants plaintiff all reasonable inferences).

2. The petition also asserted claims for sexual harassment, retaliation for asserting rights under the Missouri Human Rights Act, and discrimination on the basis of gender; however, these counts remain pending and are not the subject of this writ.

type of clear mandate of public policy necessary to give rise to a public policy discharge claim. Rancho Manor argued the MAAA does not explicitly prohibit an employer from terminating an employee for obtaining an order of protection. Respondent dismissed Count I, finding that Relator failed to state a claim upon which relief could be granted for the reasons set forth by Rancho Manor. Relator seeks relief through a writ of prohibition or mandamus to reinstate Count I and proceed on the merits.

## Discussion

A motion to dismiss for failure to state a claim upon which relief can be granted "is solely a test of the adequacy of the plaintiff's petition." Nazeri v. Mo. Valley College, 860 S.W.2d 303, 306 (Mo. banc 1993). Where the petition has stated facts that meet the elements of a recognized cause of action, then dismissal for failure to state a claim upon which relief can be granted is not appropriate. See id.

▮ This Court has jurisdiction to issue original remedial writs. Mo. Const. art V, sec. 4.1. A writ of prohibition is a discretionary writ that is appropriate to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent the exercise of extra-judicial authority. McCoy v. Martinez, 480 S.W.3d 420, 423-24 (Mo. App. E.D. 2016). A writ of prohibition can restrain further enforcement of an order that is beyond the trial court's authority "as long as some part of the court's duties in the matter remain to be performed." State ex rel. Am. Bouvier Des Flanders, Club, Inc. v. Jamison, 413 S.W.3d 359, 361 (Mo. App. E.D. 2013). Relator in essence argues Respondent exceeded her authority in granting Rancho Manor's motion to dismiss Relator's cause of action for wrongful termination as set forth in Count I. We agree.

▮ It is undisputed that Relator was an at-will employee of Rancho Manor. Employers may terminate the employment of at-will employees at any time "for any reason or for no reason." Margiotta v. Christian Hosp., 315 S.W.3d 342, 346 (Mo. banc 2010) (citation omitted). However, an employer's rights are not unfettered, and Missouri has recognized that an employer may not terminate an at-will employee where the termination would violate a clear mandate of public policy. See id. The public policy exception prevents employers from terminating at-will employees "for doing that which is beneficial to society." Fleshner v. Pepose Vision Inst., 304 S.W.3d 81, 92 (Mo. banc 2010). Missouri courts recognize four categories of the public policy exception to the at-will employment doctrine: (1) refusing to perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting the employer or fellow employees to superiors or third parties for their violations of law or public policy; (3) acting in a manner that public policy would encourage; or (4) filing a claim for worker's compensation. Delaney v. Signature Health Care Foundation, 376 S.W.3d 55, 57 (Mo. App, E.D. 2012).

▮ The public policy exception is "narrowly drawn," and judges and courts may not create public policy absent explicit statutory authority. See Margiotta, 315 S.W.3d at 346. Courts must find a clear mandate of public policy in "the letter and purpose" of the cited statutory authority. Delaney, 376 S.W.3d at 56. For example, a plaintiff claiming wrongful termination cannot cite "a patchwork of various statutes" to cobble together a claim for public policy, but must cite to a specific statute, regulation, or constitutional provision that makes "a clear statement of public policy." Hedrick v. Jay Wolfe Imports I, LLC, 404 S.W.3d 454, 459 (Mo. App. W.D. 2013). We

do not, however, require a plaintiff to "rely on an employer's *direct* violation of a statute or regulation," but rather, "the public policy must be *reflected by* a constitutional provision, statute, regulation promulgated pursuant to a statute, or a rule promulgated by a governmental body." Fleshner, 304 S.W.3d at 96-97.

■■■■ To determine whether an employer wrongfully terminated an employee in violation of the public policy exception to the at-will employment doctrine, we look to the language of the cited statute to identify a clear mandate of public policy that applies to the discharged employee under the circumstances. See Margiotta, 315 S.W.3d at 348; Hedrick, 404 S.W.3d at 459. Where the statutes cited for the public policy do not, on their face, apply to the discharged employee or the particular circumstances of the case, we will not find a clear mandate of public policy sufficient to give rise to a claim for wrongful termination. See Margiotta, 315 S.W.3d at 348 (discharged employee who complained about treatment of patients cannot claim wrongful termination either under regulation that empowers *patients* to assert *their* rights to safety, or under regulation that addresses building safety not patient treatment). Likewise, statutes that are vague or contain broad, general language not applicable to the discharged employee under the particular circumstances do not give rise to a wrongful termination claim under the public policy exception. See Jones v. Galaxy 1 Marketing, Inc., 478 S.W.3d 556, 568 (Mo. App. E.D. 2015).

■■■ Here, Relator claims wrongful termination under the third public policy exception to the at-will employment doctrine: acting in a manner that public policy would encourage. Relator asserts Section 455.050 [3] of the MAAA sets forth a clear mandate of public policy encouraging victims of domestic violence to seek protection from the court by obtaining and maintaining orders of protection against their abusers. Relator then asserts Rancho Manor effectively discharged her in violation of this public policy when Rancho Manor refused to place her on the work schedule unless she agreed to withdraw her full order of protection against Henderson. We agree.

■■■ We first look to the cited statute, Section 455.050, to see what, if any, public policy it espouses. See Jones, 478 S.W.3d at 568. Here, Section 445.050 states, "any full or ex parte order of protection ... shall be to protect the petitioner from domestic violence, stalking, or sexual assault and may include such terms as the court reasonably deems necessary to ensure the petitioner's safety." By its plain language, Section 455.050 empowers victims of domestic violence to seek protection from the courts for their physical safety. The Missouri Supreme Court in State ex rel. Williams v. Marsh recognized that the legislative intent behind the adoption of the MAAA was to provide additional protections to victims of domestic violence beyond existing criminal and tort remedies. 626 S.W.2d 223, 226 (Mo. banc 1982). The MAAA resulted from "an increased awareness nationally of the prevalence of domestic violence and of the need to protect the victims of that violence," and an acknowledgement that existing remedies were inadequate to protect victims and to prevent further abuse. Id.

■■■ In addition to empowering victims to obtain protection from the courts, the

**3.** All further statutory references are to RSMo. (cum. sup. 2016), unless otherwise indicated.

MAAA as a whole encourages victims to do so by recognizing and removing roadblocks that would discourage victims from seeking orders of protections. Section 455.030(4) demands that courts develop guidelines to provide victims with enhanced access to courts on holidays, evenings, and weekends. Section 455.030.3 protects victims from having to reveal their current address or place of residence except to the court in camera. Section 455.040.1 allows courts to include a provision automatically renewing the full order of protection without requiring the victim to confront his or her abuser every year.

There is no question that the MAAA applies to Relator, who was the victim of domestic violence and to whom a trial court granted a year-long full order of protection after a court hearing. Nevertheless, Rancho Manor argues that because the MAAA does not specifically prohibit an employer from terminating an employee for refusing to withdraw an order of protection, the MAAA's protections do not allow liability for wrongful termination. Although the public policy exception to the at-will employment doctrine is "narrowly drawn," it is not as narrow as Rancho Manor posits. Employees seeking remedy for wrongful termination are not limited to challenging only an employer's direct violation of a statute, but may pursue wrongful termination in violation of a public policy *"reflected by"* a statute. See Fleshner, 304 S.W.3d at 96. Where the termination runs contrary to a statute's clear public policy, we will not limit recovery to only statutes that specifically prohibit employers from terminating an employee who acts in accordance with the public policy.

See id. at 97 (citing Porter v. Reardon Mach. Co., 962 S.W.2d 932, 938-39 (Mo. App. W.D. 1998) (recognizing that plaintiff can bring claim for wrongful termination under whistleblower exception even where statute does not specifically prohibit dismissing employee for reporting)); see also Jones, 478 S.W.3d at 566 (courts may apply same analysis to different categories of public policy exceptions).

Section 455.050 reflects a clear public-policy mandate to ensure the safety of victims of domestic violence and to prevent further abuses by enabling and encouraging victims to obtain orders of protections through the courts. Rancho Manor's demand that Relator withdraw her full order of protection to keep her job violates this public policy and thus supports her claim for wrongful discharge. A trial court found after a hearing that Henderson was "a credible threat to [Relator's] physical safety," and it granted her an automatically renewing, one-year, full order of protection against him. Allowing Rancho Manor to coerce and demand that Relator act contrary to her physical safety violates Missouri public policy.[4] Thus, Relator's claim in Count I for wrongful discharge in violation of the public policy found in Section 455.050 of the MAAA sufficiently stated a claim upon which relief could be granted, and Respondent erred in granting Rancho Manor's motion to dismiss Count I.

Moreover, we note the circumstances here parallel the protections afforded to employees who testify at judicial proceedings. There is a well-established

---

4. While the record before us does not show that Henderson was criminally prosecuted for the October 11, 2014 physical attack on Relator and her child that led to this order of protection, we note that if he was, Missouri's Crime Victims' Rights Act also sets forth a clear mandate of public policy to afford crime victims additional protection from the defendant. Mo. Const. art. I, sec. 32.1(6) ("Crime victims ... shall have ... [t]he right to reasonable protection from the defendant or any person acting on behalf of the defendant.").

public policy to protect witnesses from reprisal by those who dislike their testimony and to prevent witness intimidation. Drury v. Mo. Youth Soccer Ass'n, Inc., 259 S.W.3d 558, 567 (Mo. App. E.D. 2008). This clear mandate of public policy imposes liability for wrongful discharge on employers who discharge an employee as a result of the employee's testimony at a judicial proceeding. Id. at 571. Here, Relator testified before a trial court about Henderson's assault and obtained a full order of protection against him. Rancho Manor demanded that Relator withdraw her order of protection, but Section 455.060.1, which establishes the procedure for modifying or terminating an order of protection, requires a court hearing prior to any modification or termination. Thus, by demanding that Relator withdraw and terminate her full order of protection, Rancho Manor was demanding that Relator give particular testimony of Rancho Manor's choosing [5] at a judicial proceeding in order to continue her employment. Viewed in this light, Rancho Manor's demand clearly violated Missouri public policy.

While this Court is cognizant that employers often confront challenging situations in our modern workforce, employers must not demand as a condition of continued employment that an employee act contrary to her physical safety by withdrawing and terminating a valid full order of protection granted her by a trial court. The employer's actions alleged in Relator's petition here [6] are plainly contrary to the clear mandate of public policy espoused in Section 455.050, and Relator is entitled to proceed with her claim for wrongful discharge. Our ruling here is limited to the unique facts of the situation before this Court.

## Conclusion

The preliminary order in prohibition is made permanent. Respondent is directed to vacate her October 28, 2016 order dismissing Count I of Relator's petition and to reinstate the cause for wrongful discharge.

Lawrence E. Mooney, J., concurs.

Angela T. Quigless, J., concurs.

---

**5.** Rancho Manor's demand that Relator testify to a change in circumstances—where perhaps none existed—in order to withdraw the full order of protection raises further concerns about whether Rancho Manor required Relator to commit perjury. Perjury is a criminal offense under Section 575.040, RSMo. (Cum Supp. 2016). To terminate Relator's employment for her refusal to commit perjury, in itself, exposes Rancho Manor to liability for wrongful discharge under the first public policy exception to the at-will employment doctrine: refusing to perform an illegal act or an act contrary to a strong mandate of public policy. See Delaney v. Signature Health Care

Foundation, 376 S.W.3d 55, 57 (Mo. App. E.D. 2012). The parties, however, only raised on appeal whether Rancho Manor's actions came within the third exception to the at-will employment doctrine.

**6.** As previously stated, we take the facts alleged in the petition as true for the purposes of reviewing a trial court's order granting a motion to dismiss for failure to state a claim upon which relief can be granted. We reverse here for further proceedings, which may reveal different facts.