

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| MICHAEL JAEGER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD83141 |
| | ) | |
| RESOURCES FOR HUMAN | ) | Opinion filed: July 28, 2020 |
| DEVELOPMENT, INC., | ) | |
| | ) | |
| Respondents. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### THE HONORABLE KENNETH R. GARRETT, III, JUDGE

Division Three: Anthony Rex Gabbert, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

Michael Jaeger appeals the dismissal of his petition in the Jackson County Circuit Court.

He claims in his sole point on appeal that the trial court erred because his petition stated a cause

of action for wrongful termination. The judgment is reversed and the case is remanded.

### Facts[1]

Michael Jaeger is a former employee of Resources for Human Development, Inc. ("RHD"),

a not-for-profit corporation that provides services to individuals who need continuing care due to

developmental disability. RHD receives funding through Developmental Disability Services of

---

[1] "We view the facts contained in the petition as true and in the light most favorable to the plaintiff." *DeFoe v. Am. Fam. Mut. Ins. Co.*, 526 S.W.3d 236, 239 (Mo. App. W.D. 2017) (internal quotation marks omitted).

Jackson County ("EITAS"[2]). Jaeger filed a petition against RHD alleging two counts of wrongful termination and one count of defamation on March 21, 2017. RHD filed a motion to dismiss for failure to state a claim, and the court dismissed the two counts of wrongful termination on August 2, 2017. Jaeger voluntarily dismissed the defamation claim and appealed the dismissal of the wrongful termination claims to this court. This court determined a final, appealable judgment did not exist and dismissed the appeal on October 23, 2018. *Jaeger v. Resources for Human Dev., Inc.*, 561 S.W.3d 455 (Mo. App. W.D. 2018).

Jaeger filed an amended petition on November 27, 2018. That petition alleged that Jaeger was directed by RHD to restrict a client's ("Client") conduct, contact, and communication with other individuals, including Client's girlfriend. Jaeger refused to carry out RHD's instructions and complained about that lack of due process[3] or procedures, which he alleges is required by EITAS. Jaeger reported RHD's directions to EITAS. EITAS advised RHD that the directions were unlawful and should not be carried out. Jaeger was then terminated from his employment because he reported RHD's actions to EITAS. He claimed he was a whistleblower terminated in violation of public policy.[4]

RHD filed a motion to dismiss the amended petition for failure to state a claim on December 7, 2018. RHD argued that the amended petition failed to identify a clear mandate of

---

[2] The genesis of this acronym is unknown and it certainly does not appear to have sprung from the entity's official name. However, both parties adopt it in their briefs, so we do likewise.

[3] At its core, "[p]rocedural due process requires the opportunity to be heard at a meaningful time and in a meaningful manner." *Colyer v. State Bd. of Registration For Healing Arts*, 257 S.W.3d 139, 145 (Mo. App. W.D. 2008) (citing *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58*, 836 S.W.2d 943, 947 (Mo. banc 1992)). "The Due Process Clauses require that in order to deprive a person of a property interest, [they] must receive notice and an opportunity for a hearing appropriate to the nature of a case." *Moore*, 836 S.W.2d at 947.

[4] Jaeger alleged in Count I that his termination was in response to him being a whistleblower and in Count II that his termination was in violation of public policy. However, Count II goes on to state that his termination was in violation of public policy because he was a whistleblower. Thus, both counts allege he was terminated as a whistleblower in violation of public policy.

public policy, and thus failed to state a claim. The court dismissed the amended petition on September 4, 2019. This appeal follows.

**Standard of Review**

"We review the trial court's grant of a motion to dismiss *de novo*." *DeFoe v. Am. Fam. Mut. Ins. Co.*, 526 S.W.3d 236, 239 (Mo. App. W.D. 2017) (internal quotation marks omitted). "We view the facts contained in the petition as true and in the light most favorable to the plaintiff." *Id*. (internal quotation marks omitted). "If the petition contains any facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim." *Id*. (internal quotation marks omitted).

**Analysis**

In his sole point on appeal, Jaeger claims the trial court erred in dismissing his amended petition for failure to state a claim. He argues he stated a claim under the public policy exception to the at-will employment doctrine, discussed *infra*. He asks this court to reverse the judgment of dismissal and remand for further proceedings. We do so.

"The at-will employment doctrine is well-established Missouri law." *Margiotta v. Christian Hosp. N.E. N.W.*, 315 S.W.3d 342, 345 (Mo. banc 2010). "Absent an employment contract with a definite statement of duration ... an employment at will is created." *Id*. (internal quotation marks omitted). "An employer may terminate an at-will employee for any reason or for no reason." *Id*. (internal quotation marks omitted).

"However, the at-will doctrine is limited in certain respects." *Id*. "An employer cannot terminate an at-will employee for being a member of a protected class, such as 'race, color, religion, national origin, sex, ancestry, age or disability.'" *Id*. (quoting section 213.055). "In addition, Missouri recognizes the public-policy exception to the at-will-employment rule."[5] *Id*.

---

[5] Effective August 2017, a new "Whistleblower's Protection Act," section 285.575, purports by its terms "to codify the existing common law exceptions to the at-will employment doctrine and to limit their future expansion by the

3

Missouri courts have recognized four public policy exceptions to the to the at-will employment doctrine:

> (1) refusing to perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting the employer or fellow employees to superiors or third parties for their violations of law or public policy; (3) acting in a manner that public policy would encourage; or (4) filing a claim for worker's compensation.[6]

*Delaney v. Signature Health Care Foundation*, 376 S.W.3d 55, 57 (Mo. App. E.D. 2012). To plead a claim of whistleblowing, the employee must allege that: (1) he reported serious misconduct constituting a violation of well-established and clearly mandated public policy; (2) the employer terminated his employment; and (3) there is a causal connection between his reporting and his termination. *Van Kirk v. Burns & McDonnell Engr. Co., Inc.*, 484 S.W.3d 840, 844–45 (Mo. App. W.D. 2016); *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 91 (Mo. banc 2010).

Pursuant to our standard of review, *supra*, we must accept the allegations in Jaeger's petition as being true. In his amended petition, he alleges the following: Jaeger's former employer, RHD, provides services for people who need special care. Jaeger was the caregiver for Client, a disabled person.

EITAS provides RHD with taxpayer generated funding. EITAS was created by state law and oversees the care provided to developmentally disabled individuals. It has the power to strip RHD of its funding. EITAS also monitors RHD's compliance with its funding requirements and imposes legal obligations on RHD that are derived from the State of Missouri's power to enforce the law. EITAS requires RHD to provide clients with due process, including a hearing, prior to stripping a client of certain civil rights. Because of this, it is alleged EITAS has a responsibility

---

courts," and "in addition to chapter 213 and chapter 287, [to] provide the exclusive remedy for any and all claims of unlawful employment practices." *See Yerra v. Mercy Clinic Springfield Communities*, 536 S.W.3d 348, 351 n.3 (Mo. App. S.D. 2017). The current causes of action predate this statute.

[6] Jaeger argues in his brief that he stated a claim under three of these four exceptions. However, his petition only alleges that he was terminated for being a whistleblower.

to ensure RHD provides procedural and substantive due process in the form of a hearing prior to restricting such rights. Thus, EITAS is alleged to be the entity responsible for investigating RHD's violations of client rights.

EITAS funding requirements ensure clients with developmental disabilities retain their constitutional rights and require RHD to support the value that developmentally disabled clients are permitted the freedom to decide how they live their lives. The rules also include the requirement that to the extent clients cannot make those decisions they will be afforded substantive and procedural due process. RHD agreed to these rules prior to accepting funds from EITAS.

RHD instructed Jaeger to restrict Client's conduct, contact, and communication with other individuals including Client's girlfriend. Jaeger refused to do so without following the due process or procedure outlined by EITAS. Jaeger reported RHD's actions to EITAS, which took Jaeger's report and found RHD's actions to be illegal. It directed RHD to cease violating Client's rights. Jaeger was terminated by RHD immediately thereafter because he reported RHD's illegal actions toward a developmentally disabled client to EITAS. Jaeger alleges this is a violation of public policy, and that he was terminated for being a whistleblower.

"[P]ublic policy is not found in the varying personal opinions and whims of judges or courts, charged with the interpretation and declaration of the established law, as to what they themselves believe to be the demands or interests of the public." *Margiotta*, 315 S.W.3d at 346 (internal quotation marks omitted). Thus, a wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute, a rule created by a governmental body, the judicial decisions of state and federal courts, the constant practice of government officials, and, in certain instances, professional codes of ethics. *Delaney*, 376 S.W.3d at 56-57; *Hedrick v. Jay Wolfe Imports I, LLC*, 404 S.W.3d 454, 458 (Mo. App. W.D. 2013).

5

Jaeger alleges in his petition that EITAS is a governmental body which has imposed rules requiring procedural due process before client rights are restricted, that EITAS is a governmental agency with authority over RHD, and that clients are entitled to due process and a hearing prior to any restriction of client rights.

"[A] plaintiff need not rely on an employer's *direct* violation of a statute or regulation." *Fleshner*, 304 S.W.3d at 96 (emphasis in original). "Instead, the public policy must be *reflected by a* constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body." *Id*. (emphasis in original). "Moreover, there is no requirement that the violation that the employee reports affect the employee personally, nor that the law violated prohibit or penalize retaliation against those reporting its violation." *Id*. at 97. Per Jaeger's allegations, EITAS investigated and agreed that RHD's actions were in violation of EITAS's rules and Client's rights. EITAS instructed RHD to cease its actions and substantiated that Jaeger's complaint had merit.

The purpose of the public policy exception is to prevent employers from discharging employees, without consequence, for doing that which is beneficial to society. *Id.* at 92. Viewing the facts contained in the petition as true and in the light most favorable to Jaeger, as we must, Jaeger was responsible for caring for a client with developmental disabilities. RHD was violating the rules it agreed to uphold when it accepted taxpayer money from EITAS by attempting to restrict Client's ability to interact with others without providing Client the required procedural due process. Jaeger, seeing his employer not following the rules and violating the rights of a developmentally disabled person, reported the violation to EITAS, the governmental entity in charge of making sure RHD abided by the terms to which it agreed. EITAS agreed that RHD was

6

acting in violation of the due process protocol and ordered RHD to cease its actions. RHD terminated Jaeger from his employment because he reported their improper behavior.

We agree, as RHD states, that "[t]he purpose behind the need for a clear mandate of public policy is to clarify the duties imposed upon employers, thereby allowing them to effectively avoid liability pitfalls." *DeFoe*, 526 S.W.3d at 243 (internal quotation marks omitted). RHD complains in its brief that it was not "on clear notice that its alleged conduct was proscribed." This, however, is not something with which we can agree. RHD completely ignores the fact that EITAS advised RHD of the violation immediately *prior* to RHD terminating Jaeger. We find this argument unpersuasive in the context of whether Jaeger's petition stated a claim.

RHD also relies on *Margiotta*, 315 S.W.3d 342, in arguing the trial court acted correctly in dismissing Jaeger's petition. *Margiotta* is distinguishable. *Margiotta* involved a grant of summary judgment and facts that were more fully developed than in the current case. *Id*. at 344. In *Margiotta*, one of the regulations on which the employee relied merely required that hospital patients "receive care in a safe setting," a directive which the Court found "too vague to support [the employee's] wrongful discharge action." *Id.* at 348. The Court found that the second regulation on which the employee relied was "not applicable in the present case," since it "clearly deals with building safety, not patient treatment." *Id.* In this case, by contrast, Jaeger relies on regulations which are clearly applicable, and which require RHD to provide clients with specific substantive and procedural protections.

Further, in making its decision, the Missouri Supreme Court stated: "What Margiotta asks this Court to do is to grant him protected status for making complaints about acts or omissions he merely believes to be violations of the law or public policy." *Id*. at 348. Jaeger is not alleging that he merely believes RHD violated EITAS's policy. Rather, he alleges that EITAS *actually found*

7

RHD was in violation of its regulations and was instructed to cease same, and, as a result, RHD terminated him. *Margiotta* and the case at hand are similar in that both involve an employee reporting violations affecting third parties, and not themselves. In this case, however, and viewing the facts in the light most favorable to Jaeger as we must do, Jaeger was responsible for caring for a client who has permanent developmental disabilities and is presumably unable to fully advocate for himself due to such developmental disability.[7] This renders the affected third party here (Client) in a different position than that in *Margiotta*. This unique factual situation is one contemplated by the public policy exception to at-will employment.

This case comes to us from the dismissal of a petition for failure to state a claim. The parties have not yet conducted discovery nor had the opportunity to fully gather evidence in this cause of action. At this stage in the proceedings we must view the facts alleged in the petition as true and in the light most favorable to Jaeger. *DeFoe*, 526 S.W.3d at 239. Jaeger alleges that there is a rule imposed by a governmental body that prior to the restriction of their rights, clients are entitled to procedural due process, a cornerstone of our Constitution. RHD knew that accepting taxpayer money came with rules it must follow. The rules were intended to protect developmentally disabled clients, a vulnerable population. Such clients cannot advocate for their rights themselves, and Jaeger reported the alleged violations on Client's behalf. This is sufficient under the facts of this case for the petition to survive a motion to dismiss for failure to state a claim.[8] The point is granted.

---

[7] EITAS provides developmentally disabled persons with care in Jackson County. It is alleged that EITAS does this by contracting with entities which provide this care. It is further alleged that RHD is an entity awarded a contract for such purpose. Further, it is alleged that Jaeger was Client's caretaker.

[8] Because we find that Jaeger alleged that EITAS, a governmental agency, requires RHD provide due process before a right is taken away and that he was terminated for reporting RHD's failure to provide such due process, we need not and do not address the alleged claim of public policy regarding the right to association.

**Conclusion**

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

/s/ W. Douglas Thomson
W. DOUGLAS THOMSON, JUDGE

All concur.